OPINION OF THE COURT
Elliott Wilk, J.
In this CPLR article 78 proceeding petitioner, Steven Hill, seeks a judgment vacating and reversing respondents’ decisioh to deny him a full supplemental food allowance.
Respondent Cesar Perales (the State), as Commissioner of *823 the New York State Department of Social Services, is charged with the responsibility of administering public assistance in New York State (Social Services Law §§ 11,17, 20).
Respondent William Grinker (the City), as Commissioner of the New York City Human Resources Administration, is charged with the responsibility of administering public assistance in New York City.
Steven Hill is a longshoreman who, before he lost his job in November 1986, was continuously employed for 13 years by the United States Line at their Staten Island port. The company went bankrupt in November 1986. Mr. Hill was unable to secure new full-time employment. He soon exhausted his savings and unemployment insurance and could no longer afford a place to live. Having no place else to go, he sought shelter at the Harlem Armory Shelter. When the Harlem Armory Shelter closed in July 1988, the City assigned Mr. Hill to the Ward’s Island Shelter. He left the Ward’s Island Shelter five months later when, with the assistance of the Legal Action Center for the Homeless, he obtained a place to live at the Senate Hotel.
When he arrived at the Ward’s Island Shelter, Mr. Hill, for the first time in his life, applied for Home Relief. He was eligible for and received a $45 per month Home Relief grant in exchange for working 20 hours per week in the public works program. He received this grant from July to December 1988.
Mr. Hill’s participation in the public works program required that he be away from the shelter during the time when lunch and dinner were served. He usually ate breakfast, which consisted of coffee and a cup of dry cereal, at the shelter.
Mr. Hill claims that during each of the five months he slept at the Ward’s Island Shelter he was entitled to receive a small allowance to supplement his breakfast, lunch and dinner because he was unable to prepare meals at home.
The City denied his request for a supplemental food allowance. A hearing was held on September 7, 1988 before the State’s designee. In a decision dated November 21, 1988, the State awarded Mr. Hill a food allowance, retroactive to July 1, 1988, to supplement only lunch and dinner, but not breakfast.
Claiming that respondents acted arbitrarily, capriciously and in error of law in deciding not to provide him with a food allowance to supplement all his meals, Mr. Hill seeks the *824 vacatur of that portion of the decision after fair hearing which denied him a food allowance to supplement breakfast and an order directing respondents to provide him a retroactive food allowance of $85 to supplement the breakfasts for which the allowance was denied.
With the Public Welfare Law of 1929 (L 1929, ch 565), New York State officially rejected punitive treatment of the poor, characterized by their incarceration in poorhouses and prisons, and began a steady transition towards programs that provide cash, goods and services to restore the economically needy to self-care and self-support. Underlying this transition is a recognition that poor people are often victims of a harsh economic system and are entitled to maintain their dignity and independence.
The State and its subdivisions have an affirmative obligation to provide for the destitute. "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine” (NY Const, art XVII, § 1).
Consistent with the constitutional mandate to "aid, care and support * * * the needy” (NY Const, art XVII, § 1), respondents are obligated "to provide adequately for those unable to maintain themselves”, and, "whenever possible [to] administer such care, treatment and service as may restore such persons to a condition of self-support or self-care” (Social Services Law § 131 [1]). The New York State Legislature has enacted a statutory plan, known as the Home Relief program, to carry out its constitutional mandate. (Social Services Law § 131 et seq.)
The Home Relief program requires that eligible individuals receive cash assistance according to the legislatively defined "standard of need” (Social Services Law § 131-a [2]). Under the standard of need, destitute people who are unable to prepare meals at home are to receive additional relief (Social Services Law § 131-a [2] [b]).
This relief is a supplemental food allowance to compensate the poor for the extra expense they incur as a result of being unable to prepare their meals in their homes: "[T]he standard of need shall include * * * amounts for additional cost of meals for persons who are unable to prepare meals at home” (Social Services Law § 131-a [2] [b]).
*825 The Department of Social Services implemented the food allowance by promulgating the "Restaurant Allowance” regulation which tracks the language of the statute. It states that recipients unable to prepare all three meals at home shall receive an additional $64 per month (18 NYCRR 352.7 [c]).
Respondents contend that because meals are provided in shelters to shelter residents, they are not entitled to a supplemental allowance. Respondents do not deny that shelter residents cannot prepare their own food. Shelter residents are not even permitted to bring food into the shelters. Respondents contend that they made a special exception for Mr. Hill with respect to lunch and dinner only because his participation in their public works program made him miss lunch and dinner at the shelter.
Respondents’ interpretation of Social Services Law § 131-a (2) (b) and 18 NYCRR 352.7 (c) is unreasonable and in conflict with the historical and legal framework of public assistance in New York State. It is also inconsistent with the plain language of both the regulation and the statute.
The provision of the supplemental food allowance to destitute people who sleep in shelters is wholly consistent with the self-care and self-support principles underlying New York State’s social welfare laws. It allows the homeless to be less dependent on public shelters, freeing them to seek permanent housing and employment. In mandating the provision of a cash supplemental food allowance, the Legislature has chosen to provide more than mere subsistence to destitute people unable to prepare food at home. It has provided a small measure of independence and dignity to those people.
Respondents have neither the statutory nor regulatory discretion to deny this legislatively mandated benefit to eligible recipients like Mr. Hill. Accordingly, the petition is granted. Respondents’ decision after fair hearing was arbitrary, capricious and contrary to law. Destitute residents of shelters who cannot prepare their own meals are entitled to a supplemental food allowance for breakfast, lunch and dinner. Respondents are directed to provide Mr. Hill with a retroactive food allowance of $85 to supplement his breakfasts for the period from July to December 1988.